Daniel S. Szalkiewicz, Esq.  (DS2323)
Cali P. Madia, Esq.
DANIEL SZALKIEWICZ & ASSOCIATES, P.C.
23 WEST 73RD STREET
SUITE 102
NEW YORK, NEW YORK 10023
*Attorneys for Plaintiff T.K.*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| T.K.<br><br>        Plaintiff,<br><br>   v.<br><br>█████████████████████████<br><br>       Defendant. | **COMPLAINT**<br><br>Civil Action No. 23-cv-5441 |

Plaintiff T.K. ("Plaintiff" or "T.K."), by her attorneys DANIEL SZALKIEWICZ &

ASSOCIATES, P.C., as and for her Complaint hereby alleges, upon information and belief, as

follows:

### PRELIMINARY STATEMENT

1.    Plaintiff is a user of Omegle, a chat-based service which matches individuals with

similar interests in text or video-based chats.  The goal of Omegle is to connect like-minded

people around the world.

2.    In December of 2021, Plaintiff was visiting New York with friends and family

when she and others in her hotel room connected with Defendant ███████████████

█████████████ (██████ or "Defendant").

3.      Though from vastly different areas of the country, they connected over their shared ethnic, and cultural background.  Defendant provided Plaintiff and her friends with places of interest they may wish to visit while in New York.

4.      When Plaintiff returned home, she and Defendant continued to communicate about Palestinian culture, but also about their personal lives.

5.      Eventually, though the parties had never met, their conversations became sexual and Plaintiff agreed to and actually did remove her clothing and underwear during several of their FaceTime sessions.

6.      Before long, Plaintiff became uncomfortable with Defendant, who was beginning to display a penchant for intolerance, cruelty, and abuse.  But when Plaintiff attempted to cut ties with Defendant, he sent her screenshots he had captured which showed Plaintiff naked and threatened to send them to Plaintiff's parents and other members of her family.

7.      Livid that Plaintiff no longer wished to communicate with him, Defendant told Plaintiff that all he wanted to do was "f*ck" her, said that "god doesn't love [her]" and told her she was a "hoe."  Defendant sent the images and demanded that she "Pick up" the phone.

8.      Defendant's threats made Plaintiff suicidal and, recognizing this, Defendant agreed to delete the images, sending Plaintiff a screen recording of him doing so.

9.      For approximately one year, Plaintiff believed Defendant was out of her life for good when she received a text from her cousin that a man in New York was sending her fiancé naked pictures of Plaintiff.

10.     Five months later, Defendant matched on Omegle with a teenage girl from Plaintiff's hometown, confirmed that the girl knew Plaintiff, and then shared Plaintiff's intimate images with her as well.

11.     Plaintiff has made it known to Defendant that she does not consent to the dissemination of her images and that his mere threat to disseminate them jeopardized her mental health severely.  Despite this, Defendant has engaged in a course of conduct designed to cause her intense distress.

12.     Accordingly, Plaintiff brings this action seeking injunctive, declaratory, and monetary relief against Defendant for violations of federal privacy laws, 15 U.S.C. § 6851, [c]ivil action relating to disclosure of intimate images, related New York nonconsensual pornography statutes, and intentional infliction of emotional distress.

## THE PARTIES

13.     Plaintiff T.K. is a resident of East Baton Rouge Parish, State of Louisiana.

14.     Defendant  ( or "Defendant") is a resident of the County of Queens, State of New York.  Defendant  last known address is  New York 

## JURISDICTION AND VENUE

15.     This action is brought pursuant to 28 U.S.C. § 1332(a)(1) based upon Diversity of Citizenship because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and it is between a citizen of New York and a citizen or subject of a different state.

16.     This action is also brought pursuant to 28 U.S.C. § 1331, federal question, pursuant to 15 U.S.C. § 6851.

17.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the Eastern District of New York is the Judicial District in which Defendant is domiciled.


**FACTUAL ALLEGATIONS**

**The Parties Match and Communicate**

18.     The parties first met by way of the networking site, Omegle.  Omegle is a chat-based service which matches individuals with similar interests in text or video-based chats.  The goal of Omegle is to connect like-minded people around the world.

19.     Though Plaintiff resided and resides in Louisiana and Defendant resided and resides in New York, the parties were likely matched due to their shared interest in Palestinian culture.

20.     At the time the parties were matched, Plaintiff was vacationing in New York with friends and family.

21.     As Defendant indicated he lived just a couple counties away, the group used the opportunity ask Defendant about places to visit in New York while they were in town.

22.     While many members of the group spoke with Defendant while they were in New York, neither Plaintiff nor anyone else in the group met Defendant in person.

23.     When Plaintiff returned to Louisiana, she and Defendant continued to speak online.  Plaintiff found it easy to confide in a stranger who lived so far away and, before long, was revealing intimate details about her private life.

24.     Recognizing Plaintiff was experiencing difficulties in her marriage, Defendant seized upon her distress and exploited it, insisting that her marriage was abusive.

25.     Eventually, Plaintiff began to believe him.

26.     The parties' conversations grew sexual and, before long, Plaintiff agreed to remove items of her clothing while they were FaceTiming.

27.     But little by little, Defendant began to reveal parts of himself that scared Plaintiff.

28.     Defendant would frequently state his disdain for Black people, for instance, and would attempt to induce Plaintiff to join him in using racial slurs.  Defendant would grow frustrated and upset when Plaintiff took a position opposite to his and refused to engage in similar language.

29.     When the parties would get into such disagreements, Defendant was quick to remind Plaintiff of what he was "capable of" and would provide her with examples of retaliatory actions he had taken against others who displeased him.

30.     Defendant claimed, for instance, that he had previously placed one such individual's address onto a gay dating website and posted that he was hosting a party in order to harass that person by way of unsuspecting strangers showing up at the person's door.

**Plaintiff Attempts to Distance Herself**

31.     On or about February 6, 2022, realizing she was in over her head, Plaintiff attempted to distance herself from Defendant.

32.     Defendant did not take kindly to Plaintiff's request for space.

33.     Defendant wrote to Plaintiff "God doesn't love you" sent two intimate images of Plaintiff: one in which her hands were covering her exposed breasts and another which displayed her naked buttocks.  Below the images, Defendant wrote: "Look at this" and demanded that Plaintiff "Pick up" his phone call.

34.     Defendant demonstrated that he possessed his parents' address and a phone number and business address, implicitly threatening that he would send the images if Plaintiff did not do as he said.



35.     Plaintiff, who had no idea he had been screenshotting their FaceTime, was devastated.  If Defendant followed through on his threats, she was certain her conservative family would disown her and her husband would surely file for divorce.

36.     Plaintiff pleaded with Defendant to delete the content, telling him that he was going to drive her to kill herself.

37.     Eventually, Defendant sent Plaintiff a screen recording of him deleting the content.

38.     The parties stopped speaking and, for a period of approximately one year, Plaintiff regarded their encounter as a very scary lesson which she would never repeat.  She and her husband worked on their marriage, and, for a time, things felt normal.

**Defendant Resumes His Harassment**

39.     On January 14, 2023, Defendant thrust himself into Plaintiff's life once again when he text messaged her cousin's fiancé about not getting invited to his wedding, which was scheduled to occur in Louisiana the following day.

40.     During the course of their conversation, Defendant indicated that he knew Plaintiff, sending Plaintiff's cousin's fiancé intimate images of her in which her breasts were exposed.

41.     Upon learning what Defendant had done, Plaintiff text messaged him stating that his actions were illegal and threatening legal action.

42.     Defendant blocked her without responding.

43.     Plaintiff was hopeful that she could finally put her momentary lapse in judgment behind her but, unfortunately, Defendant's harassment was not over quite yet.

44.     Unbeknownst to Plaintiff, on or about May 13, 2023, Defendant matched with a 16- or 17-year-old girl in Baton Rouge, Louisiana.  Hearing her hometown, Defendant inquired if she knew Plaintiff.  When the young girl answered in the affirmative, Defendant falsely claimed that he had once visited Plaintiff in Louisiana and that the two had been intimate.

45.     Defendant again sent Plaintiff's naked images; some showed Plaintiff in her bra and underwear while others showed her breasts alone.

46. In shock, the young girl attempted to take screenshots of the content she was being shown. Defendant threatened that he would cut off communication if she continued doing so.

47. The young girl, who was successful in screenshotting a single intimate image she was shown, then alerted Plaintiff's husband's family of what Defendant had sent her.

48. Notably, the images Defendant used to threaten Plaintiff are not the same as the ones he sent to the young girl.

49. The single screenshot the young girl was able to capture shows Plaintiff's bare breasts.

50. In the images shared by Defendant with Plaintiff's cousin's then-fiancé, now husband as well as the young girl, Plaintiff is clearly identifiable both because her face is visible and present in the photo and because Defendant informed both third parties that the individual depicted was Plaintiff.

**Emotional Toll on Plaintiff**

51. Defendant's harassment has had a devastating impact on Plaintiff, who has considered taking her own life on numerous occasions due to Defendant's conduct and fear of the looming repercussions.

52. Plaintiff has experienced countless sleepless nights tormented by Defendant's actions and those he may take in the future. During the day, Plaintiff can randomly become overwhelmed by this fear and has begun experiencing sporadic panic attacks.

53. Plaintiff is unable to avoid or control these panic attacks, which start with a sudden onset of anxiety and progress into debilitating physical symptoms.

54.     Plaintiff has further become consumed with the possibility that Defendant has already shared her intimate images with other third parties who have chosen to remain quiet about what they have seen rather than have the difficult conversation with Plaintiff.

55.     Additionally, because Defendant showed the images to a young girl associated with Plaintiff's husband's family, Plaintiff's in-laws have now seen Plaintiff in a state of undress and are aware of Plaintiff's online indiscretion.  As a result, Plaintiff's relationship with her in-laws has suffered.

56.     Finally, as Plaintiff lives in a sizeable but tightknit Palestinian community in Baton Rouge, Louisiana, Plaintiff fears but is unable to avoid the fact that Defendant's outreach to the young Palestinian girl will inevitably make its way back to Plaintiff's family.

## FIRST CAUSE OF ACTION
### (Violation of 15 USC § 6851, Video One)

57.     Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

58.     Defendant disclosed the images by text message and Omegle using his cell phone/computer.

59.     Defendant did not obtain Plaintiff's consent to disclose the images and videos.

60.     Defendant knew that Plaintiff did not consent to the disclosure of the content online and, in fact, misrepresented to Plaintiff that he had deleted the content he had captured.

61.     As a result of Defendant's conduct, Plaintiff has been damaged.

62.     Plaintiff demands judgment for any actual damages which exceed the jurisdictional limits of all lower courts which would have otherwise have jurisdiction of this

matter, but not less than $150,000.00, together with damages for pain and suffering and punitive

damages, attorney's fees, costs of this litigation, injunctive relief preventing Defendant from

disseminating the images, and such other relief as the Court deems equitable and just.

## SECOND CAUSE OF ACTION
### (Violation of Civil Rights Law §52-b)

63.     Plaintiff repeats and realleges the allegations stated above as if fully set forth

herein.

64.     Plaintiff had a reasonable expectation that the content, when captured, would

remain private.

65.     The content disclosed by Defendant contained the exposed intimate parts of

Plaintiff and/or Plaintiff engaging in sexual conduct.

66.     Defendant disseminated and published Plaintiff's intimate content without

Plaintiff's permission or consent.

67.     The content was shared for the purpose of harassing, annoying, or alarming

Plaintiff and in retaliation for her refusing to further communicate with him.

68.     As a result of Defendant's actions, Plaintiff demands judgment for any actual

damages which exceed the jurisdictional limits of all lower courts which would have otherwise

have jurisdiction of this matter, together with damages for pain and suffering and punitive

damages, attorney's fees, costs of this litigation, injunctive relief preventing Defendant from

disseminating the images, and such other relief as the Court deems equitable and just.

## THIRD CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

69.     Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

70.     Defendant has engaged in the intentional, extreme, and outrageous conduct of capturing images of Plaintiff's intimate parts without her knowledge or consent; threatening Plaintiff using those images; and then following through on that threat by disseminating Plaintiff's intimate images to third parties known by Plaintiff.

71.     Defendant has intentionally aimed his harassment at individuals who know Plaintiff for the sole purpose of harming her standing in the Palestinian community and interfering with her relationship with her family and husband.

72.     Defendant did all of this knowing that his decision to do so would have irreversible, lifelong consequences for Plaintiff and her mental well-being due to prior conversations in which Plaintiff had indicated that his threat to disseminate her images had made her suicidal.

73.     Defendant's conduct was so extreme in degree and so outrageous in character that it goes beyond all possible bounds of decency.

74.     Defendant's sole purpose in sharing the images was to harass and/or embarrass Plaintiff and cause her harm.

75.     Defendant intended to cause severe emotional distress or recklessly disregarded the likelihood that such conduct would tend to cause severe emotional distress.  Such outrageous behavior is beyond the limits of decency and is intolerable in a civilized society.

76.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe emotional distress.

77.     Defendant acted with the intent to cause severe emotional distress, or alternatively, disregarded the substantial probability that his actions would cause severe emotional distress.

78.     Here, the acts of Defendant were so egregious and were done so clearly with malice and/or reckless indifference in the face of a perceived risk that his actions would harm Plaintiff's reputation and mental well-being, that, in addition to all the damages inflicted upon Plaintiff and in addition to all the measure of relief to which Plaintiff may properly be entitled herein, Defendant should also be required to pay punitive damages to punish him for his reckless conduct in the further amount greater than the jurisdictional limit of all lower courts to be determined by the trier of fact, in order to deter him and others similarly situated from engaging in such conduct in the future.

79.     Plaintiff demands judgment against Defendant in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff for her severe injuries as well as an amount sufficient to punish Defendant for his willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendant, containing the following relief:

A.     An award of damages against Defendant in an amount to be determined at trial, but not less than $150,000.00 per intimate image and video shared, plus prejudgment interest, to

compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her emotional distress;

B.      An injunction and order permanently restraining Defendant from disseminating Plaintiff's intimate images and videos without her permission or consent;

C.      An award of punitive damages, and any applicable penalties and/or liquidated damages in an amount to be determined at trial;

D.      Prejudgment interest on all amounts due;

E.      An award of costs that Plaintiffs have incurred in this action, including, but not limited to, expert witness fees, as well as Plaintiffs' reasonable attorneys' fees and costs to the fullest extent permitted by law; and

F.      Such other and further relief as the Court may deem just and proper.


Dated: New York, New York
       July 18, 2023

                                    Respectfully submitted,

                                    **Daniel Szalkiewicz & Associates, P.C.**

                                    _/s/ Daniel Szalkiewicz_____
                                    By:     Daniel S. Szalkiewicz, Esq.
                                            Cali P. Madia, Esq.
                                    23 West 73rd Street, Suite 102
                                    New York, NY 10023
                                    Telephone: (212) 706-1007
                                    Facsimile: (646) 849-0033
                                    daniel@lawdss.com

                                    _Attorneys for Plaintiff_